NAKDIMEN *v.* BROWNFIELD, ADMINISTRATRIX.

4-6727                                    162 S. W. 2d 566

Opinion delivered May 25, 1942.

*Martin L. Green* and *Cleveland Holland,* for appellant.

*G. Byron Dobbs, Pryor & Pryor* and *Harper & Harper,* for appellee.

GRIFFIN SMITH, C. J. V. R. Brownfield died July 19, 1935. His wife (appellee here) was made administratrix of his estate.

Brownfield was vice-president and cashier of First National Bank at Greenwood, and became associated with I. H. Nakdimen. In 1921 Browning and Nakdimen orally contracted to operate Greenwood Motor Company, a Ford agency. Later a writing was executed, the two partners to share equally in profits. Brownfield agreed to make annual reports. Nakdimen's connection with the business was not generally known until July, 1935.

Brownfield, in 1932, borrowed $4,273.80 from Mrs. E. R. Bruton for partnership purposes. He executed a note signed "Greenwood Motor Company, by V. R. Brownfield." Eight thousand six hundred dollars was similarly borrowed from Dr. R. O. Bruton. Payments aggregating $722.50 were made on the note in favor of Mrs. Bruton, in eight installments from September 14, 1933, to April 27, 1934. From January 4, 1933, to June 28, 1935, forty-one payments amounting to $6,721.58 were made on the obligation due Dr. Bruton.

March 5, 1937, judgments were rendered by Sebastian circuit court against Nakdimen in favor of Mrs. Bruton for $5,353.86, and in favor of Dr. Bruton for $4,496.99. On appeal Nakdimen contended the trial court erred in overruling his motion to require the administratrix of Brownfield's estate to be made a party to the Bruton suits. The judgments were affirmed. *Nakdimen* v. *Bruton et al.,* 196 Ark. 1179, 112 S. W. 2d 974.

August 13, 1937, Nakdimen sued Margaret Brownfield as administratrix, alleging that V. R. Brownfield, until his death, had conducted the partnership business, having exercised supervision of account books and all financial transactions. It was asserted that when Brownfield died, the administratrix took charge of all records and assets. Nakdimen averred he had no personal knowledge of the manner in which the business had been conducted, except such information as had been gained through conversations with Brownfield, and that Brownfield had personally withdrawn $16,343.24, while payments of only $5,000 had been made to him. It was asserted the difference in Nakdimen's favor was $5,671.62, for which judgment was asked. An accounting was prayed.

A demurrer was sustained April 20, 1938, on the ground that the court was without jurisdiction.

In an amended complaint of April 29, 1938, Nakdi·men omitted his prayer for judgment in a specific amount, but repeated the demand for an accounting. He alleged the partnership was indebted to him in a sum unknown.

The defendant's answer of October 10, 1938, was a general denial, coupled with the assertion that when Brownfield died the partnership was indebted to him in an unknown sum. Books, papers, all records and assets, were delivered to Nakdimen. Limitation was pleaded. The answer contained a petition that Nakdimen, as surviving partner, be required to account.

In a substituted answer of July 15, 1941, laches was pleaded, in addition to limitation and want of jurisdiction. There was an allegation that after Brownfield's death the administratrix made demand upon Nakdimen for $10,000, represented by note. It was paid without question.[1] Insistence is that when Nakdimen made this payment in 1935 he had full information regarding partnership accounts.

A final amendment to Nakdimen's complaint was filed July 25, 1941. Regarding the Bruton judgments, Nakdimen alleged that all assets of the partnership in his hands had been paid in satisfaction of obligations. In addition, he was compelled to advance $1,306 from private funds. Contribution for half this amount was demanded. Still another allegation was that Brownfield paid C. E. Osborn $1,401 from partnership funds for a lot in Greenwood, purchased for the firm. The administratrix had listed this property as an asset of Brownfield's estate. The property forfeited for taxes and was purchased by H. S. Nakdimen (appellant's son) as trustee.

J. C. Davis was employed by Nakdimen to make an audit of the motor company's business. He found all cau-

---

[1] Profits of $20,000 had accrued to the partnership business. Nakdimen took his half in cash and borrowed Brownfield's $10,000 share.

celled checks, but no ledger, journal, or cash book. Davis testified that when the cancelled checks were found he did not look for additional data ". . . because assets of the company could be more accurately determined from the checks than from anything else."

Davis testified he received fullest coöperation from the administratrix, and added: "Even if I had found journals and ledgers, I would have taken the cancelled checks in preference to book entries any time." There was nothing, he said, to prevent Nakdimen from ascertaining the true status. In September, 1935, he showed Nakdimen what the partnership owed him, "to the penny." When asked if there were other books or records that would be of value in ascertaining the facts, Davis replied, "I don't think there are any."

In 1933 or 1934 the Greenwood Motor Company was sold to Bud Williamson, but it continued in business under the old name. This occurred about eighteen months before Brownfield died. Appellee insists that all records pertaining to the partnership business were delivered to Kagy, First National Bank cashier, who represented Nakdimen.

There is no evidence that Nakdimen presented an account to the administratrix. The first action seems to have been a proceeding for debt, based upon the Davis audit. Thereafter the complaint was amended in an effort to confer chancery jurisdiction by the demand for an accounting.

As a matter of law, Nakdimen, as surviving partner, was charged with the duty of accounting to Brownfield's estate. Death dissolved the partnership. *Luke* v. *Rhodes,* 117 Ark. 600, 176 S. W. 111.

In view of testimony given by Davis as auditor and witness for Nakdimen, to the effect that all existing records were in the surviving partner's hands and had been for several years, there is no information the administratrix can give. It is not alleged that Mrs. Brownfield had personal knowledge regarding any of the transactions. The demand for an accounting, therefore, is designed to procure chancery court approval of the audit Davis made

for Nakdimen. Jurisdiction could not be invoked for this purpose alone. Nor is it sufficient to say that title to the lot should be quieted. H. S. Nakdimen is admittedly his father's agent. The lot was sold on execution to satisfy a partnership debt, and is held by H. S. Nakdimen as trustee. No claim to it has been made on behalf of Brownfield's estate.

The decree is affirmed.

HUMPHREYS, J., (dissenting). This suit was brought in the chancery court of Sebastian county, Greenwood district, by appellant, surviving partner, against appellee, the administratrix of the estate of the deceased partner, V. R. Brownfield, for the adjustment and settlement of the partnership affairs between the partners themselves during the time they conducted the partnership business. It was not a suit to wind up the partnership after the death of V. R. Brownfield. It was the privilege and duty of the surviving partner, I. H. Nakdimen, to do that, and he did so by collecting the debts due the partnership and applying the proceeds thereof and the other assets of the partnership toward the partnership indebtedness. The assets of the partnership were not sufficient to pay all the partnership debts, so the unpaid creditors sued I. H. Nakdimen individually and compelled him to pay them. He then brought this suit not only for contribution from the estate of his deceased partner, but alleged and offered to prove that in the conduct of the partnership business by his deceased partner, he, his deceased partner, drew out of the partnership assets much more than appellant and prayed for an accounting between them. It was alleged that his deceased partner bought certain real estate with partnership assets and took the title thereto in his individual name, and that appellee as administratrix included in her inventory of the estate of deceased certain property whereas said property was purchased with partnership funds and was an asset of the partnership, and that the value of the real estate should be taken into account in a partnership settlement between them. It was also alleged that no partnership books were kept by the deceased partner as

it was his duty to do under the written contract of partnership between them, and that a partnership adjustment between them would have to be ascertained from an examination of bills receivable and bills payable, check stubs and returned checks covering a long period of time and prayed for a complete accounting and settlement between appellant and his deceased partner.

The trial court took the view that appellant as surviving partner should wind up the partnership and sue the administratrix of the estate of the deceased partner in a court of law for whatever amount he might conclude was due him. In other words, the court dismissed the complaint for want of equity.

I am of the opinion that the chancery court was the only court that had the jurisdiction to adjust the partnership affairs between the partners, and that no other court has jurisdiction to do so. This court said in the case of *Holloway* v. *Morris*, 182 Ark. 1096, 34 S. W. 2d 750, that: "No specific money claim or demand can exist in favor of one partner against another growing out of the partnership affairs until there has been a settlement and some amount found to be due from one to another. Hence, until the affairs of the partnership are wound up, the state of the account between the partners is inchoate and continuous." To the same effect is the case of *Evans* v. *Hoyt*, 153 Ark. 334, 240 S. W. 409.

In the case of *Luke* v. *Rhodes*, 117 Ark. 600, 176 S. W. 111, this court said: "The adjustment of partnership affairs is inherently a matter for the intervention of a court of equity, although a resort thereto is not necessary where the parties can adjust such matters themselves."

This court also said in the case of *Short* v. *Thompson*, 170 Ark. 931, 282 S. W. 14, quoting from page 933, that: "Equity jurisdiction is practically exclusive in proceedings for an account and a settlement of partnership affairs, and this includes for an accounting between the partners themselves."

This court also said in the case of *Tankersley* v. *Patterson*, 176 Ark. 1013, 5 S. W. 2d 309: "In a suit for

accounting and settlement of partnership affairs, the jurisdiction of equity is practically exclusive.''

I think the trial court instead of dismissing appellant's complaint for want of jurisdiction should have tried the case upon its merits, and for that reason I am dissenting from the majority opinion in this case.

Mr. Justice SMITH and Mr. Justice MEHAFFY join me in this dissent.