Bonnie HUNTER and Bonnie Jo CONNELLY *v.*
John L. CONNELLY, Nell Jean Connelly MILLER
and Arthur P. CONNELLY

5-5018                                         446 S. W. 2d 654

Opinion delivered October 27, 1969

[Rehearing denied December 1, 1969]

*Curtis L. Ridgeway, Jr.* and *John C. Echols,* for appellants.

*Wooten, Land & Matthews,* for appellees.

Frank Holt, Justice. The appellants brought this action for specific performance of three written instruments which they contend constitute a ''Bill of Sale.''

Appellants alleged that these instruments were executed by Mrs. Jeannette Connelly, who is now deceased. She was the proprietor and later majority shareholder of Connelly Press, Incorporated.

Appellants, Bonnie C. Hunter and Bonnie Jo Connelly, are respectively the widow and adult daughter of Joseph Connelly who died on April 28, 1959, subsequent to the date of these written instruments. His widow, appellant Bonnie C. Hunter, was convicted of involuntary manslaughter as a result of his death. Appellees are the surviving three children of Jeannette Connelly.

Appellants base their cause of action on three instruments, one dated July 31, 1954, and two dated October 27, 1958. The appellants contend these instruments are bills of sale executed by Jeannette Connelly conveying a one-third interest in her business and a one-fourth interest in the balance of her property to her son, Joseph Connelly, and his wife and daughter, the appellants, as joint tenants. Appellants brought their cause of action on June 14, 1967, for the specific performance of these three instruments and for a transfer to them of their alleged ownership interest. The appellees controverted appellants' claim, alleging that the signature of Jeannette Connelly was a forgery and invoked other affirmative defenses such as statute of limitations, laches, etc. The trial court dismissed appellants' complaint for want of equity specifying the grounds for the dismissal of their complaint.

For reversal the appellants urge that the trial court erred in finding that: Appellants' cause of action is barred because of their failure to assert a claim against the estate of Jeannette Connelly; their claim is barred by laches; their claim is barred by the statute of limitations; and the appellants failed to prove their cause of action by a preponderance of the evidence. Since we agree with the chancellor that the appellants' cause of action is barred by our five-year statute of limitations,

Ark. Stat. Ann. § 37-209—10 (Repl. 1962), it becomes unnecessary for us to discuss the correctness of the other findings of the chancellor.

According to the appellants, Joseph Connelly, in 1954, was considering leaving his job in his mother's printing business on account of discord within the family. Appellant Hunter testified that to alleviate the family discord, Mrs. Jeannette Connelly, on July 31, 1954, by a written Bill of Sale and Ownership Agreement, which was introduced into evidence, sold and conveyed to her son Joseph, with full survivorship rights in the appellants, a one-third interest in the business and a one-fourth interest in all her other property in recognition of his years of service and in return for her son's promise to remain as a linotype operator in the printing business. There was a joint covenant to keep the agreement confidential. Mrs. Connelly covenanted that the conveyance of this interest could not be altered or changed by her through a will or in any other manner. This instrument admittedly was written by appellant Hunter and her husband.

However, strife within the Connelly family continued. In March 1958 appellant Hunter and her then husband, Joseph Connelly, filed a $100,000.00 lawsuit against Jeannette Connelly and Arthur Connelly as a result of a family altercation in which appellant Hunter claimed she was struck by her mother-in-law and brother-in-law, Arthur. Then followed the two written agreements dated October 27, 1958. By these instruments appellant Hunter and her then husband, Joseph, agreed to discontinue their lawsuit and in return Mrs. Jeannette Connelly again recognized that the business "legally belongs to Joe, Art and John Connelly" and each should have a one-third interest. Further, that "[i]t is agreed by both Joseph E. Connelly and Mrs. J. M. Connelly to full co-owner and survivorship rights from either one's estate to Bonnie and Bonnie Jo Connelly, not to void or change this by divorce, separation, other partner-

ships or incorporation or by Will and Testament. This is recognized as a Bill of Sale and Transfer, as co-owner, to Bonnie Connelly, $10.00 and other consideration, and is legal and binding. No transaction shall be made without my signature as co-owner. Should I die first, or Joe and I die, ownership reverts to Bonnie Jo Connelly. Should discord at the shop continue, Mrs. J. M. Connelly and Joe Connelly both agree to cash settlement immediately.'' There was a provision in which appellant Hunter's husband, Joe, agreed to refrain from any act that would alter appellants' survivorship rights. These instruments were also written by appellant Hunter and her husband, Joe Connelly, and signed by them and Mrs. Jeannette Connelly. There was no covenant to keep these agreements confidential.

In December 1958 appellant Hunter and her husband separated and he instituted a suit for divorce. They were estranged at the time of his death in April 1959.

Assuming, without deciding, that these instruments are valid, it is undisputed that the last two agreements were breached four months after their execution when the business was incorporated in February 1959. All of the assets together with Mrs. Connelly's title and interest in the printing business were transferred to Connelly Press, Inc. Mrs. Connelly received a majority of the issued stock. A portion of the authorized stock was distributed in equal shares to appellees. Joseph Connelly received no stock in the corporation. However, he was elected to the board of directors. Joseph Connelly understood that he was not receiving stock. He disclaimed interest in any ownership saying that he was only interested in having a job. The evidence shows that he affixed his signature as a director to the minutes of the first business meeting on February 25, 1959.

Following Joseph Connelly's death on April 28, 1959, an administrator of his estate was appointed on October 12, 1959 upon the petition of his mother and the

appellees. Appellant Hunter unsuccessfully sought appointment as administratrix of her husband's estate. She testified that she exhibited the three written instruments to the administrator in December 1959 and he rejected them saying that she "had no interest whatsoever." Appellants never filed any claim to this estate based upon the instruments now relied upon.

Appellant Hunter testified that in November 1959 and again in June 1961 she wrote to her mother-in-law, Mrs. Connelly, asserting her rights according to "these Bill of Sales" and asking that she and her daughter be given "what is ours." She stated there was no compliance with the request in these letters.

The will of Mrs. Jeannette Connelly dated May 22, 1959, was admitted to probate on November 12, 1963. She had died in September 1963. Her stock certificates and other property were distributed according to the terms of her will to the appellees. It appears undisputed that appellant Bonnie Jo Connelly, the granddaughter, received a copy of the will with a $1.00 bequest and that appellant Hunter was aware of the will and its provisions. The estate was closed and the executor dismissed in December 1964. Appellant Hunter testified that in October 1963 she asserted her rights in a letter to John Connelly and received no response. The appellants made no demands on the executor, Arthur Connelly, nor presented any claim to the shares of stock or the property listed in the inventory of the Jeannette Connelly estate.

There was evidence presented by the appellees that during the lifetime of Joseph Connelly he never made any claim to any ownership interest in the business and that the mother, Jeannette Connelly, never indicated to her other children that her son Joseph had any interest in the business. According to the public accountant who had performed all of the accounting work for the firm since 1947, all the records reflected the business as an individual proprietorship in the name of Mrs. Jeannette

Connelly until it was incorporated in 1959. There was nothing in the business records that indicated any right or claim in favor of Joseph Connelly or the appellants before or after the incorporation of the business.

Assuming, without deciding, as we have indicated, that the written instrument dated in 1954 and the two written instruments dated in 1958 are valid, it must be said that two months before Joseph Connelly's death in 1959, his ownership rights under these agreements now sought to be enforced were breached by the incorporation of his mother's business. A cause of action definitely accrued at that time on his behalf if he so desired. Instead, it appears he was content with being made a member of the board of directors and receiving no stock in the corporation which became the owner of all the assets of his mother's printing business. In fact, he affixed his signature to the minutes of the initial meeting of the board of directors.

The general rule as to when a cause of action accrues is well stated in 34 Am. Jur., Limitation of Actions, § 113, p. 92. There it is said:

"* * * It may be stated as a sound general proposition that a cause of action accrues the moment the right to commence an action comes into existence, and the Statute of Limitations commences to run from that time * * *."

See, also, § 137, p. 110.

In *Rawlings* v. *Ray*, 312 U. S. 96, 61 S. Ct. 473, 85 L. Ed. 605 (8th Cir. 1941), it is said:

"The words 'after the cause of action shall accrue' in the Arkansas Statute have their usual meaning and refer to 'a complete and present cause of action.' "

The statute of limitations begins to run when there

is a complete and present cause of action. *Holloway* v. *Morris,* 182 Ark. 1096, 34 S. W. 2d 750 (1931).

Certainly, under the terms of these written agreements and the attendant facts of family strife and violence, appellants' rights vested and their present cause of action accrued at the latest upon Joseph Connelly's death in 1959.

Appellants assert they first discovered in 1966 that in 1959 Mrs. Connelly transferred her interests to the corporation. Even though that be true, the ignorance of a cause of action does not prevent the running of the statute of limitations unless there has been fraudulent concealment on the part of those invoking the statute. *Landman* v. *Fincher,* 196 Ark. 609, 119 S. W. 2d 521 (1938), and *Arkansas Power & Light Co.* v. *Decker,* 181 Ark. 1079, 28 S. W. 2d 701 (1930). See, also, 54 C.J.S., Limitation of Actions, § 205, p. 216. In the case at bar it appears the appellants were neither ignorant nor unaware of the existence of the claims they now assert, nor is there any evidence of fraudulent concealment on the part of the appellees. The written instruments relied upon by appellants were in their exclusive possession for more than five years before this action was instituted.

The chancellor was correct in finding that appellants' action was not commenced within five years after their cause of action accrued and is, therefore, barred by the statute of limitations.

Affirmed.